In re STRUNKS LANE & JELLICO MOUN-
TAIN COAL & COKE CO., Inc.

No. 180.

District Court, E. D. Kentucky.

Feb. 28, 1946.

John M. Perkins, of Somerset, Ky., referee.

Leonard S. Stephens, of Whitley City, Ky., for petitioners Miller & Strunk.

FORD, District Judge.

This case is submitted upon the petition of Walter Miller and Cal Strunk to review an order of the Referee entered on December 6, 1945, by which this bankruptcy proceeding was dismissed upon application of the bankrupt. The petitioners claim to have purchased certain property of the bankrupt estate and are aggrieved by the termination of the proceeding without consumption of their purchase.

On December 5, 1944, the Strunk Lane and Jellico Mountain Coal and Coke Company, a Kentucky corporation, was adjudged a bankrupt, upon its voluntary petition, and the case was referred to the Referee for administration. It appears from the record certified by the Referee that the principal assets of the estate consisted of a small acreage of mineral lands, in some of which the bankrupt owned the fee and in others it owned only the under-

lying minerals. Several meetings of creditors were held soon after the adjudication at which a trustee was appointed and claims of various creditors were presented and allowed. At a meeting of creditors held on August 17, 1945, bids of W. B. Miller and Brown Crinkley for the purchase of certain lands were presented and approved by the creditors. Thereafter the petitioners, Miller and Strunk, filed bids for the purchase of the remaining property of the estate. Upon the petition of the Trustee the Referee called a meeting of creditors to be held at the office of the Referee on October 23, 1945, to consider the bids presented by Miller and Strunk, due notice of which was mailed to all creditors.

The Referee's minutes of the meeting of October 23, 1945, recite the action taken by the creditors as follows:

"First bid considered was the bid of Cal Strunk for all of the land owned by the bankrupt located on the west side of the New Orleans and Texas Pacific Railway right of way, same being mineral rights, and said being considered, same was approved, said bid being in the sum of $75.00.

"The next bid considered was the bid of Walter Miller for all of the lands on the east of the Cincinnati, New Orleans and Pacific Railway right of way, including in fee and all minerals, excepting therefrom the Cinda Anderson tract of 14½ acres, in the sum of $1150.00. This bid being considered by all of the creditors present same was approved by all creditors except Brown Crinkley, who voted against accepting said bid. These voting for approval of the bid exceeded in number and amount of claims that of the said Brown Crinkley, and same was approved.

"Attending said meeting was one, T. A. Creekmore, who announced that he had placed a bid of $1750.00 for all of the property of the bankrupt, with Napoleon B. Perkins, but that he did not have said bid with him and as same had never been filed either before notices for said meeting had been mailed to creditors or since, said bid was not considered."

Thereupon the Referee made and entered the following order:

"It is therefore considered by the court that the bids made for the property of the bankrupt, at the first meeting of creditors held on the 17th day of August, 1945, and approved at that time; and the bids made for the remaining property of the bankrupt on the 23 day of October, 1945, be and the same are hereby approved."

Thereafter, on October 25, 1945, the bankrupt filed with the Referee a petition for dismissal of its original petition upon which adjudication of bankruptcy was made, accompanied with a list, under oath, of all its creditors as required by section 59, sub. g, of the Bankruptcy Act, 11 U.S. C.A. § 95, sub. g. The Referee called a meeting of creditors, for the consideration of the bankrupt's application for dismissal, to be held on November 12, 1945. At this meeting the petitioners, Miller and Strunk, objected to the dismissal sought by the bankrupt, manifested their readiness to comply with their bids which, as they asserted, had been approved by the creditors and the Referee on October 23, 1945, and insisted upon their right to have the sale consummated by the execution of deeds in accordance with section 70, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. g. Nevertheless, upon the bankrupt exhibiting consent of all creditors who had filed claims and payment of all costs, the Referee, by an order made and entered on December 6, 1945, granted the bankrupt's application and dismissed the original petition, thereby terminating the case. This proceeding for review of that order promptly ensued.

The only provision of the Bankruptcy Act relating to dismissal of a bankruptcy proceeding is contained in section 59, sub. g. This section of the Act prescribes certain requirements without which an application for dismissal shall not be granted. It is silent as to the particular circumstances or conditions upon which such action may be taken.

■ "The Bankruptcy Court is a court of equity and is guided by equitable doctrines and principles." In re Bender Body Co., 6 Cir., 139 F.2d 128, 130. "Where the Bankruptcy Act * * * is silent on any question of procedure, equitable principles are followed." In re Sullivan, D.C., 23 F.Supp. 142.

■ The power of the Court in the exercise of judicial discretion, to dismiss a bankruptcy proceeding when the prescribed conditions have been complied with, is clearly implied, but the Act does not confer upon the bankrupt or any other applicant an absolute right to have the pro-

ceedings dismissed, even with the consent of the creditors, if such action would be so inequitable as to divest rights lawfully acquired in the bankrupt estate by purchasers or would otherwise result in substantial prejudice to parties in interest.

A trustee's sale in bankruptcy is a judicial sale. Although prior to confirmation of the sale a bidder is not a purchaser and is not vested with any title or interest in the property offered for sale, upon acceptance of the bid and confirmation thereof by the Referee the sale is complete, the bidder becomes the purchaser of the property and the equitable title passes to him together with the right to have title conveyed as provided by section 70, sub. g, Bankruptcy Act, upon his compliance with the terms of the sale. In re Wolke Lead Batteries Co., 6 Cir., 294 F. 509. The purchaser of property sold in a bankruptcy proceeding becomes a party to the action, subjects himself to the jurisdiction of the Court and, when aggrieved by an order of the Referee which affects his purchase, may petition for review as provided by section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c. 2 Am.Jur. 959, § 179; Blossom v. Railroad Co., 1 Wall. 655, 68 U.S. 655, 17 L.Ed. 673.

Confirmation of a judicial sale is merely the formal expression of judicial sanction or approval of it by the Court. The order of the Referee entered in this case on October 23, 1945, sufficiently expresses the Referee's approval of the bids of the petitioners, Miller and Strunk, to constitute confirmation of the sale to them of the property to which their bids applied. Dismissal of the proceedings without consummation of the sale by accepting the purchase price tendered and requiring the Trustee to execute conveyance of the property sold is obviously inequitable and highly prejudicial to the rights of petitioners.

"Judicial sales are an indispensable part of the machinery employed in administering bankrupt estates." Currin v. Nourse, 8 Cir., 66 F.2d 137, 140. Public policy requires that nothing be done to impair confidence in the stability of such judicial sales, and bona fide purchasers should not be deprived of their rights without just cause. "Inadequacy of price alone is rarely sufficient—that is, there must be proven gross inadequacy, or circumstances

from which palpable mistake or fraud is to be inferred." In re Pneumatic Tube Steam Splicer Co., D.C., 60 F.2d 524, 527; In re Burr Mfg. & Supply Co., 2 Cir., 217 F. 16, 19.

If, without questioning the validity of a judicial sale of bankruptcy assets, consummation thereof could be circumvented by dismissal of the bankruptcy proceedings after confirmation of the sale by the Referee, the salutary public policy designed to promote confidence in the integrity and stability of such sales would be frustrated.

So much of the Referee's order of December 6, 1945, as dismissed the original petition of the bankrupt and terminated further proceedings should be set aside and this case should be remanded to the Referee for further proceedings consistent herewith.