**In re SUSQUEHANNA CHEMICAL CORPORATION.**

No. 21716.

United States District Court
W. D. Pennsylvania.

Sept. 28, 1950.

See also, D.C., 81 F.Supp. 1.

Henry A. MacDonald (of Gifford, Graham, MacDonald & Illig), Erie, Pa., for debtor.

GOURLEY, District Judge.

The present matter arises out of a reorganization proceeding. A Trustees' petition was filed to sell divers houses and contiguous lands of the Debtor. Objection has been made to the confirmation of the sale of three parcels.

Unconditional bids, with the payment of hand money, have been made to the Trustees and firmly accepted by them, subject only to approval and confirmation by the Court. Three prospective purchasers objected to the confirmation in that leave was asked to withdraw the offers or bids previously made without prejudice.

The circumstances which relate to each parcel involve the same propositions of law and no useful purpose can be served by detailing the facts as to each parcel. Suffice to say, we are concerned with the following:

| Property | Bidder | Amount of Bid | Hand Money Paid |
| --- | --- | --- | --- |
| House No. 31 | Ruth Enis | $900.00 | $175.00 |
| House No. 33 | Ruth Enis | 2000.00 | 375.00 |
| House No. 35 | W. J. Buffington | 1300.00 | 225.00 |

There was no written agreement executed by the Trustees with the prospective purchasers.

Issue—May an offeror in a Trustees' petition to sell real estate in a reorganization proceeding withdraw an unconditional bid on the date set for hearing for the confirmation of said sale.

### Opinion

The element of lack of a sufficient memorandum to conform to the Pennsylvania Statute of Frauds, being the Act of March 21, 1772, 33 P.S. § 1 et seq., may not be raised as a bar to a legally binding contract in a transaction of this kind. Our courts have kept judicial sales outside of the statute. A sheriff sale is not deemed within the statute; Cash v. Tozier, 1841, 1 Watts & S., Pa., 519, 527 nor have sales conducted by order of Orphans' Court been deemed subject thereto, King v. Gunnison, 1846, 4 Pa. 171; Fulton v. Moore, 1854, 25 Pa. 468; Goucher v. Martin, 1839, 9 Watts, Pa., 106. A sale conducted by a trustee in bankruptcy is a judicial sale, In re Strunks Lane and Jellico Mountain Coal & Coke Co., Inc., D.C.1946, 64 F.Supp. 731, and consequently a bid accepted by a trustee in such a proceeding need not satisfy the statute. The purchaser at a judicial sale enjoys sufficient protection by the decree of court under which sale was made.

In re United Toledo Co., 6 Cir., 1945, 152 F.2d 210.

The novel problem raised by the present controversy involves the capacity of a bidder to withdraw his bid prior to its approval and confirmation by the court. Can it be said that the bidder becomes bound immediately upon its acceptance by the trustee, or does his bid remain a continuing offer until approved and confirmed by court? If the latter be true, the bidder, of course, is free to withdraw.

Since the bankruptcy sale is a judicial sale, one of the parties thereto is the bankruptcy court itself. Although title vests in the trustee, not in the court, and although the trustee acts as a formal party and as an instrumentality of the court, the true vendor is the court. This characteristic feature of a judicial sale accounts for certain peculiarities and deviations from an ordinary sale, governed by the familiar rules of offer and acceptance. It is my considered judgment that the same rule of law would have application in a trustees' petition for the sale of real estate in a reorganization proceeding.

The Trustees, in their petition requesting confirmation of the sales, place considerable emphasis on In re Lane Lumber Co., 9 Cir., 1913, 207 F. 762, to sustain their thesis that the offer by the bidder and

acceptance thereof by the trustee constitutes a binding and enforceable contract. To further supplement this view they make reference to 4 Collier on Bankruptcy, p. 1575, where it is said:

"Since a private (as well as public) sale is subject to the court's approval, unless in the opinion of the court the application for such approval was not 'practical,' the mere agreement of trustee and purchaser, as embodied in the sales contract does not generally complete a private sale. It binds the purchaser."

This viewpoint is further reiterated by Gilbert's Collier on Bankruptcy, p. 1265:

"When the sale is completed by the acceptance of the bid by the trustee, it becomes binding upon the bidder, and he cannot insist before confirmation that the money paid be returned."

To construe the above language and to properly understand the significance of the In re Lumber Company case, supra, this Court is of the opinion that the mechanics and proceedings of a bankruptcy sale must first be understood. "In judicial sales, such as are sales by trustees in bankruptcy, the court is the real seller and the trustee is its agent to obtain the highest bid * * * the sale is not consummated nor does title pass until confirmation." 6 Remington on Bankruptcy, p. 30. A great distinction must be made between the acceptance of a bid at a sheriff sale, which may be voided only in the event of fraud, accident or mistake, and the acceptance of a bid by a trustee in bankruptcy. The trustee in bankruptcy, in securing bids, is a salesman in behalf of the court, and it is understood by the bidder and trustee, as well as third parties, that anybody is free to bid upon the day of sale in spite of any bids previously accepted by the trustee. Generally, the highest bid upon the day of sale receives the approval of the court. Previous bidders, whose bids have been accepted by the trustee, are free to be ignored.

Until such approval upon the day of sale, this Court does not detect the existence of a binding contract. The purchaser, therefore, cannot be bound until acceptance and approval by the Court. Coulter v. Blieden et al., 8 Cir., 104 F.2d 29.

What is the status of the trustee-bidder relationship prior to the court's approval at a public sale? If we speak of a contract relationship, we find the bidder promising to purchase the property, while the trustee agrees merely to submit the bid subject to be overruled by any subsequent higher bid. An accepted bid by a trustee makes the bidder no more than one whose proposal has been recommended. In re Klein's Rapid Shoe Repair Co., 2 Cir., 1931, 54 F.2d 495. A bidder is not a purchaser but merely an offeror to the court. The East Hampton, 2 Cir., 1931, 48 F.2d 542. To hold the bidder bound to his undertaking when the trustee can shove his own promise aside with complete abandon is violative of the fundamental rules of contract law. There is no mutuality of contract. A promise which is not binding is insufficient consideration to support a contract. Restatement of the Law of Contracts, Sec. 80; Williston on Contracts, Sec. 103E.

To hold that an enforceable contract exists between trustee and bidder prior to the court's approval would prove inimical to the interests of creditors who are entitled to receive the highest attainable values for the Debtor assets. Such a right implies a public sale where all the world is free to bid. It is an undeniable contradiction to say that on the one hand a binding contract has been created between a single bidder and the trustee, and that, on the other hand, anybody is free to offer more favorable bids at the public sale.

Once a public sale has been held, and approval has been rendered to the bidder by the court, an enforceable and binding contract takes effect. True enough, the court may refuse confirmation upon specified grounds, but once the court initially has given approval the parties are bound, unless there was (1) fraud, unfairness, or mistake in the conduct of the sale, or (2) unless the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise the presumption of fraud, unfairness or mistake. In re Stanley Engineering Corp., 3 Cir., 1947, 164 F.2d 316.

Public policy in no way runs counter to the conclusion that a bid may be withdrawn prior to the court's approval. Nobody is hurt by such a withdrawal. Any expenses incurred by the trustee in accepting such bid may be reimbursed therefrom. The very reason that the bidder is not bound inures to the benefit of creditors in that it allows for higher and more favorable bids until the sale is closed.

■ It is true, as trustees here contend, that a court of bankruptcy has summary power over a delinquent purchaser to compel him to pay the stipulated price or pay the deficiency resulting from a resale. In the matter of Peter Solantikas, Bankrupt, 1929, 23 F.2d 200, 13 Am.Bankr.Rep. 543. However, this doctrine of summary enforcement applied where the sale had been held, the bid had been approved and confirmed by the court, and the goods were in the possession of the bidder. A bid was deemed enforceable after the open sale, including, as it did, court approval. In the matter of Rival Knitting Co., Inc., 1923, 289 F. 960, 1 Am.Bankr.Rep. 31. In the case of In re Lane Lumber Company, supra, there is nothing to indicate that such bid had not been approved at the public sale. Nor, in the light of the proceedings of a bankruptcy sale, can it be said that Collier on Bankruptcy referred to the bidder as being bound prior to the court's approval. By the term "approval," it is quite reasonable to believe that Collier referred to confirmation, for it is true that the mere agreement of trustee and purchaser, as embodied in the sales contract, does not generally complete a private sale. It binds the purchaser only after confirmation and approval by the court. In re Bender Body Co., D.C., 1942, 47 F.Supp. 224, 230; U. S. ex rel. and for Use of Tennessee Valley Authority v. Davis, D.C., 1941, 41 F.Supp. 595.

■ The bids submitted in the present instance were tentative, pending the acceptance of additional bids, necessitating the court's approval. Until such approval no contract took effect. Since these withdrawals were effected previous to court approval of the sales in question, Trustees' petition requesting confirmation of said sales must be denied. All other sales included herein shall be confirmed.

■ The Trustees unquestionably incurred certain items of expense in dealings and discussions which were had with the three prospective purchasers, and certain expenditures were required to have the matter presented to the Court. The Debtor's estate should be saved harmless and the proportional part of the cost of this proceeding should be borne by the purchasers who have been granted leave to withdraw their offers. The Trustees will, therefore, be directed to deduct from the hand money paid by the three prospective purchasers the proportionate cost of the costs or expenses which have arisen by virtue of this proceeding, and any other costs incident thereto, and make refund of the balance which then remains to the three prospective purchasers.