**In the Matter of A.H.—R.S. COAL CORPORATION, Debtor.**

**WALTER GREEN, INC., Plaintiff,**

v.

**A.H.—R.S. COAL CORPORATION, Defendant.**

**Bankruptcy No. 77–88.**

United States Bankruptcy Court, W. D. Pennsylvania.

Jan. 14, 1981.

Richard F. Pohl, Hacker & Pohl, Greensburg, Pa., for plaintiff.

Mark L. Glosser, Lampl, Sable & Makoroff, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the complaint of Walter Green, Inc. seeking monetary damages arising from its purchase of a Lima shovel at a public sale of equipment of A. H.—R. S. Coal Corporation (hereinafter called "AH–RS"), the debtor-defendant. The plaintiff alleges that the Lima shovel sold by AH–RS and purchased by Walter Green, Inc. was a Model 2000 rather than a Model 2400, the model listed in the defendant's advertisement flyer. Additionally, the plaintiff claims that certain parts were stolen from the shovel, and from other pieces of equipment bought by the plaintiff, after the sale but prior to the time that the plaintiff removed the equipment from the auction site. Plaintiff seeks an abatement of $22,500 from the $45,000 purchase price of the shovel, $4,000 additional costs incurred in removing it from the auction, and $5,320.30 replacement costs for new equipment parts.

In its answer, the defendant counters by alleging that the equipment was sold "as is", "where is", that no warranties, except title, were made by the seller, and that the risk of loss passed to the plaintiff at the fall of the auctioneer's hammer.

After considering the evidence adduced at trial and the briefs filed by counsel, the Court enters the following findings of fact and conclusions of law.

### I. Findings of Fact

Pursuant to the Court's order dated July 31, 1978, Forke Brothers, Auctioneers, conducted a public auction on August 26, 1978 of the debtor's personal property in Parker, Pennsylvania. The Court confirmed the sale on September 8, 1978. At the auction, the plaintiff was the successful bidder of the following pieces of equipment: (1) an International TD–25C Crawler Tractor, serial number 3487; (2) an Ateco VPRS025 Vibrating Single Shank Ripper, serial number 21714; and (3) a Lima 2400. No serial number was found on the Lima 2400.

Prior to the auction, Forke Brothers mailed the plaintiff an advertisement flyer which accurately stated the time and location of the sale and the payment obligations of the successful bidders. The flyer clearly stated that the descriptions contained therein of the debtor's property serve only as a guide to the prospective buyer, and that AH–RS does not warrant, expressly or impliedly, the condition of any piece of equipment. The flyer contained the following relevant provisions:

> Immediate possession of all equipment upon proper settlement. No equipment is to be removed until proper settlement has been made. After the auctioneer has sold a piece of equipment it becomes the sole responsibility of the purchaser! Condition of equipment in this catalog is mere-

ly a guide and is in no way a warranty or guarantee, actual or implied. All equipment is sold "As is, where is". Bills of sale will be mailed to the purchasers of the major items . . .

The equipment may be inspected at anytime. All of the equipment will be running prior to the sale and will be demonstrated upon request. Should you have any questions whatsoever during the sale, please feel free to ask any one of the clerks or Auctioneers.

After an item has been sold it becomes the sole responsibility of the purchaser. No equipment is to be removed until complete settlement has been made. Settlement can be made at anytime during the sale; however, SETTLEMENT MUST BE MADE SALE DAY!!! An invoice will be supplied to the purchaser at the time of settlement. This invoice, properly authenticated by the Cashier, will be required in order to remove equipment from the lot.

All descriptions of equipment in this catalog are believed to be correct and have been conscientiously set forth by the owner. However, neither the owner nor the Auctioneers are responsible for any errors in description or condition . . . NOTICE: The above categories of condition are believed to describe the equipment and have been conscientiously set forth by the owner. The equipment is available for public inspection and the foregoing is merely a guide. The condition as set forth on each piece is in no way a warranty or guarantee, actual or implied.

The flyer described the shovel in question as a "Lima 2400 shovel, S/N 3504, with Cat D–397 diesel engine, high front shovel with 67' boom, 50' dipper stick, 4½ c.y. bucket, Koehler light plant, 63" pads, 25' crawlers, 19' 11" wide . . . gone through completely, the starting engine was rebuilt and some new hook rollers and linings installed."

There is no evidence that the shovel was in working condition on the day of the sale. The plaintiff inspected the shovel on August 15, 1978, the day before the sale, but did not try to start the machine.

At trial, Walter Green, Inc. failed to prove that it purchased a Lima 2000 rather than a Lima 2400 from the defendant. A Lima shovel's model number is usually determined by reference to the serial number that is located on the machine. A serial number was not found on the shovel bought by the plaintiff. Plaintiff's expert witness failed to examine the specific Lima in issue and based his identification solely upon his assumption that the shovel's serial number was 3504, the number that was listed in the auction catalog. The advertisement flyer, which the plaintiff had read before bidding on the equipment, expressly provided that the descriptions of the equipment are based only upon what AH–RS Coal believed to be correct. Robert Snyder, president of AH–RS Coal Corporation, testified that he believed the shovel was a Lima 2400, because the bill of sale that the defendant received when it purchased the shovel for $175,000 on October 31, 1974, described the shovel as a "Lima 2400 S/N 3504."

At the auction, an agent of AH–RS announced that one of its employees would be at the sale site 24 hours per day for seven days beginning August 28, 1978, so that the successful bidders could pick up the equipment at their convenience. The agent further announced that the employee would be at the auction site only to check the bills of sale and to release the equipment. AH–RS neither announced that they would provide security for the sold equipment nor expressly assumed the risk of loss during this period. After the auction, the Lima shovel remained in a non-lighted area located one-half mile from the sale site until the plaintiff secured it on August 31, 1978. It is clear that the plaintiff could not have reasonably inferred from the defendant's announcement that any security would be provided for the protection of the shovel.

The plaintiff failed to prove that the fair market value of the Lima shovel was less than $45,000, the amount that it paid for the machine. The market value of a Lima shovel depends upon the specific condition of the equipment, as well as the model and the date of manufacture. The plaintiff did not produce an expert who had examined

the particular shovel in controversy and who could, therefore, testify as to the market value of the machine.

## II. *Discussion*

■ This litigation was commenced prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, and, accordingly, is governed by the former Bankruptcy Act. Pub.L. 95–598, Title IV, § 403(a), Nov. 6, 1978, 92 Stat. 2683.

■ A bankruptcy sale is a judicial sale, *In re Dennis Mitchell Industries, Inc.*, 419 F.2d 349, 359 (3 Cir. 1969), wherein the Court is the real vendor, notwithstanding that title vests in the trustee or, as in a case under arrangement pursuant to Chapter 11 of the Act, vests in the debtor-in-possession. *In re Susquehanna Chemical Corporation*, 92 F.Supp. 917 (W.D.Pa.1950). Consequently, only upon confirmation by the court does the sale confer property rights upon the purchaser. *In re Gil-Bern Industries, Inc.*, 526 F.2d 627 (1st Cir. 1975).

■ In accordance with the foregoing findings of fact, the Court concludes that the plaintiff failed to meet its burden of proving that the Lima shovel is a Model 2000 and not a Model 2400. As a matter of law, even if the plaintiff had proven that it purchased a Model 2000, Green would not be entitled to recovery. The doctrine of caveat emptor, which is applicable generally to judicial sales, applies to bankruptcy sales, *Hagan v. Gardner*, 283 F.2d 643 (9th Cir. 1960), and the purchaser assumes the risk of the quality and condition of purchased goods, unless the purchaser is protected by warranty. *Hall v. McGehee*, 37 F.2d 854 (5th Cir. 1930). In this case, the debtor-in-possession expressly stated in its advertisement flyer that the equipment descriptions are based only upon what AH–RS believed to be correct and that the defendant does not warrant, expressly or impliedly, the condition of any piece of equipment. The flyer also clearly stated that the equipment is sold "as is", "where is". The plaintiff inspected the machine on August 15, 1978 and, therefore, had ample opportunity to inquire into the model number of the machine.

■ The plaintiff also complains that it is entitled to damages since parts were removed from various pieces of equipment after the sale, but prior to the time that the plaintiff secured them on August 31, 1978. Risk of loss in a bankruptcy sale is not expressly governed by any section of the Bankruptcy Act, and research fails to disclose a federal court decision which has considered the issue. Section 2–509 of the Uniform Commercial Code, which allocates the risk of loss between the buyer and seller in the absence of a breach of contract is, however, applicable here. While the Uniform Commercial Code is not binding on a federal court, it may supplement federal bankruptcy law, and it is "well on its way to becoming a truly national law of commerce." *United States v. Wegematic*, 360 F.2d 674, 676 (2d Cir. 1966). *See, e. g., Fruehauf Corp. v. Yale Express System*, 370 F.2d 433 (2d Cir. 1966); *Redisco, Inc. v. United Thrift Stores, Inc.*, 363 F.2d 11 (3d Cir. 1966); *First National Bank & Trust Co. of Tulsa v. Hutchins*, 28 U.C.C. Rep. 874 (N.D.Okl.1979).

Section 2–509(3) of the Code provides that in cases where the seller is not authorized or required to ship the goods by carrier and where the goods are not held by a bailee, the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery. *E. g., Martin v. Melland's, Inc.*, 27 U.C.C.Rep. 94 (1979). Significantly, section 2–509 expressly contemplates the allocation of the risk of loss by the parties themselves, and provides in subsection (4) that "the provisions of this section are subject to contrary agreement of the parties ..." The section's underlying purpose of placing the risk of loss on the party most likely to have taken precautions against the loss, *Mitchell v. Highway Equipment Co.*, 21 U.C.C.Rep. 1034 (1976), represents a radical departure from prior law under the Uniform Sales Act, which provided in general that the party who had title in the goods also bore the risk of loss. *See generally* White and Summers, Handbook of the Law under the Uniform Commercial Code 134–66 (1972).

■ Although title to the equipment did not pass to the plaintiff until the Court confirmed the sale on September 8, 1978, *In re Gil-Bern Industries, Inc.*, 527 F.2d at 528, the parties entered into an agreement on August 26, 1978, the date of the auction, which placed the risk of loss on the plaintiff immediately after the sale. The defendant's offer of sale, as embodied in its advertisement flyer, clearly stated that "[a]fter the auctioneer has sold a piece of equipment, it becomes the sole responsibility of the purchaser". The plaintiff, who had read the flyer prior to the sale, accepted the risk of loss when it bid on the various pieces of equipment. This finding is in accordance with section 1–201 of the Code, which defines "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circustances including course of dealing or usage of trade or course of performance as provided in this Act."

Judgment for the defendant will be entered pursuant to this opinion.