[Nos. B038583, B039704. Second Dist., Div. Three. June 22, 1989.]

FRANCIS FORD COPPOLA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JACK SINGER et al., Real Parties in Interest.

[Opinion certified for partial publication.*]

---

* Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for publication excepting part II.

**COUNSEL**

Chrystie & Berle, Elihu M. Berle and William H. Jennings for Petitioners.

Hetland & Hansen, John R. Hetland, Charles A. Hansen and Steven M. Morger as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Greenberg, Glusker, Fields, Claman & Machtinger, Robert S. Chapman and Roger L. Funk for Real Parties in Interest.

## Opinion

**DANIELSON, J.**—By their initial petition for a writ of mandate or other extraordinary relief (B038583), Francis Ford Coppola (Francis), Eleanor Coppola (Eleanor), Zoetrope Productions (Zoetrope), and Hollywood General Studios, Inc. (HGS; collectively, defendants)[1] seek to overturn respondent court's order dated November 21, 1988, granting summary adjudication of certain issues. By a second and a supplemental (or third) petition for such relief (B039704), defendants seek, inter alia, to overturn or modify the court's orders dated January 20 and 30, 1989, in which the court barred discovery sought by defendants by reason of the November 21 order.

We grant the initial petition as to Eleanor. The second and supplemental petitions are dismissed as to Eleanor on the ground of mootness. We deny all of the petitions as unmeritorious with respect to the remaining defendants. The alternative writs issued by this court in conjunction with those petitions are discharged.

In passing on the petition in B038583 this court resolves an issue of first impression under federal and California law: Do the "fair value" limitation provisions of sections 580a and 726 of the Code of Civil Procedure[2] apply to a sale "free and clear of liens" under the Bankruptcy Code? We hold they do not. By statute, the "fair value" limitation provisions apply only to judicial foreclosure sales (§§ 725a, 726) and nonjudicial foreclosure sales (§ 580a). A sale "free and clear of liens" under the Bankruptcy Code is neither a judicial nor a nonjudicial foreclosure sale under California law. Moreover, the application of the "fair value" limitation provisions to a sale "free and clear of liens" is not compelled by California's principles of equity. (Cf. *Butner* v. *United States* (1979) 440 U.S. 48, 55-56 [59 L.Ed.2d 136, 141, 99 S.Ct. 914].)

---

[1] Francis and Eleanor were the sole owners of Zoetrope Studios Inc., which was the sole owner of Zoetrope and HGS. As the result of a merger on November 3, 1981, HGS became the successor to Esquire Holding Company, which had been previously wholly owned by HGS.

[2] All further section references are to the Code of Civil Procedure unless otherwise indicated.

## Factual Statement

Jack Singer (Singer) was the principal shareholder of Atlas Finance and Realty Corporation, Ltd. (Atlas). Pursuant to a "Memorandum of Understanding" dated March 6, 1981, and its addendum (March 6 Agreement), Atlas agreed to loan Zoetrope a total of $8 million as interim financing for the production of a motion picture entitled "ONE FROM THE HEART" (picture), which loan was to be repaid only out of the gross proceeds from the exploitation of the picture. That loan was to be delivered "on the date of closing."

At certain intervals prior to the closing date, however, Atlas made four advances to Zoetrope in the sums of $1 million, $1 million, $500,000, and $500,000, respectively, for a total of $3 million. Each of these advances was evidenced by a separate promissory note executed by Zoetrope as the borrower and guaranteed by Esquire Holding Company (Esquire) and Francis. Esquire's guaranty was secured by a deed of trust on the subject real property (the Studio Property). At all relevant times prior to February 10, 1984, either HGS or Esquire owned the Studio Property. Darion Development Corporation (Darion), as agent for Atlas, was "the lender, payee and beneficiary, respectively," of the advances, notes, and deed of trust.

Pursuant to the March 6 Agreement the notes were to be cancelled upon closing under that agreement and the advanced $3 million would be considered part of the $8 million loan. If no closing occurred, then Atlas had no duty to loan Zoetrope the $8 million, and Zoetrope's obligation to repay the $3 million remained payable pursuant to the promissory notes.

"Closing" would occur "at a mutually agreeable place and time upon satisfaction of the Conditions of Closing . . . , but in no event later than ['. . . the expiration of six (6) days after the day of the Fourth Advance.']" The "Fourth Advance" was made on March 26, 1981.

As a condition to closing, Zoetrope, HGS, and Esquire agreed to deliver to Atlas the consent of Chase Manhattan Bank (Chase) to the terms of the March 6 Agreement. Chase had loaned approximately $10.6 million as of that date for the production of the picture. Pursuant to the March 6 Agreement, Chase would agree, inter alia, that Atlas would be in first position, *pari passu* with Chase, with respect to the right to recoupment.

According to the March 6 agreement, in the event of a failure to meet a "Condition of Closing," the notes were payable "one month after the latest permissible closing date" or "one month after written demand by Atlas,"

whichever event occurred first. On their face, however, the four notes were payable "not later than two months after demand."

It is undisputed that Chase's consent to the terms of the March 6 Agreement was never obtained and that there was no "closing" under the March 6 Agreement. It is also undisputed that the remaining $5 million of the proposed loan was never delivered to Zoetrope and that none of the $3 million advanced to Zoetrope pursuant to the subject four notes has been repaid.

PROCEDURAL STATEMENT

In July, 1983, HGS, owner of the Studio Property, was the debtor in an involuntary chapter 11 bankruptcy proceeding. Pursuant to an order dated December 22, 1983,[3] the bankruptcy court granted the request of HGS, as debtor-in-possession, to sell its assets free and clear of all liens and to set a minimum bid of $12.2 million for the Studio Property.

At the February 10, 1984, auction of the assets of HGS, Darion purchased the Studio Property for $12.3 million. By order of the same date the bankruptcy court confirmed the sale and ordered that title to the property was to vest "free and clear of all liens, encumbrances and claims of any and all persons and entities whomsoever."

On January 31, 1985, the bankruptcy proceeding against HGS was dismissed on HGS's motion. There has been no adjudication that any debt HGS owed to Darion has been discharged.

On February 1, 1985, Singer, Darion, and Atlas (collectively, plaintiffs) filed the underlying action for a money judgment based on the debt evidenced by the four promissory notes, not on the March 6 Agreement, and on February 19, 1985, filed a first amended complaint. On October 18, 1985, Francis, Eleanor, and Zoetrope filed a joint answer. Also on that date Zoetrope and HGS filed a cross-complaint against plaintiffs for breach of the covenant of good faith and fair dealing, fraud, negligent misrepresentation, and interference with prospective economic advantage.

By court order HGS was added as a Doe defendant in the second amended complaint filed January 27, 1986.

On February 21, 1986, defendants answered the second amended complaint by generally denying its material allegations and by asserting various

---

[3] That order was affirmed by the United States District Court on December 23, 1983.

affirmative defenses including breach of the covenant of good faith and fair dealing, fraud in the inducement and a defense referred to by defendants as "economic duress."

Following a hearing on November 21, 1988, the court granted plaintiffs' motion for summary adjudication of 16 issues as specified.[4]

On December 1, 1988, defendants filed their first petition for a writ of mandate or other extraordinary relief (B038583), which challenged the November 21, 1988, order with respect to all the issues as to Eleanor but only issues 7, 9, 10, 11, and 15 as to the remaining defendants. We issued an alternative writ.

---

[4]The November 21, 1988, order granted summary adjudication of 16 issues as follows:

"1. In March 1981, Atlas Finance and Realty Corporation, Ltd. and Zoetrope Productions reached an agreement (the 'Agreement') that, upon the fulfillment of conditions specified in the Agreement, plaintiffs would lend the sum of $8,000,000 to Zoetrope Productions for the purpose of financing a motion picture entitled 'One From the Heart.'

"2. To fulfill one of the conditions precedent to the loan of $8,000,000 to Zoetrope Productions by plaintiffs, Zoetrope Productions and its affiliates were to deliver to plaintiffs the consent of Chase Manhattan Bank to the terms of the Agreement.

"3. In February and March of 1981, plaintiffs advanced $3,000,000 to Zoetrope Productions pending fulfillment of the conditions of the Agreement, but in so doing plaintiffs waived neither the condition that Chase Manhattan Bank consent to the terms of the Agreement nor any other condition precedent to the contemplated loan of $8,000,000.

"4. In consideration of the advance of $3,000,000 to Zoetrope Productions, Zoetrope Productions gave plaintiffs four promissory notes totalling $3,000,000 which were payable two months after demand (the 'Notes').

"5. Payment of the Notes was guaranteed by Francis Ford Coppola.

"6. Neither Zoetrope Productions nor any of its affiliates ever obtained the consent of Chase Manhattan Bank to the terms of the Agreement.

"7. The Notes became fully payable by their own terms on or about December 26, 1981, two months after demand was made.

"8. On or about January 29, 1982, demand for payment of the Notes was made upon Francis Ford Coppola as guarantor.

"9. No part of the principal sum of the Notes or the interest thereon has ever been paid by any defendant, either as principal debtor or as guarantor.

"10. Plaintiffs' First Cause of Action for breach of contract is not barred by any statute of limitations set forth in Code of Civil Procedure section 337.

"11. Plaintiffs' Fourth Cause of Action based on guaranties is not barred by any statute of limitations set forth in Code of Civil Procedure section 337.

"12. Plaintiffs granted no extension of time to the principal debtor.

"13. Guarantor Francis Ford Coppola was not prejudiced by any alleged failure of plaintiffs to proceed against the principal debtor before proceeding against Coppola as guarantor.

"14. There was no lack of consideration for Francis Ford Coppola's guaranties of the Notes.

"15. The 'fair value' provision of Code of Civil Procedure section 580a provides no defense to plaintiffs' Fourth Cause of Action against Francis Ford Coppola as guarantor.

"16. The alleged fact that plaintiffs threatened to foreclose on defendants' property after default on the Notes constituted no wrong."

On January 20, 1989, the respondent court granted the motion of plaintiffs to stay discovery regarding the fraud and economic duress issues on the ground that those issues were disposed of by the November 21, 1988, order.

On January 31, 1989, defendants filed a supplemental petition for a writ of mandate or other extraordinary relief (B039704) in which they sought to have the January 20 order vacated or modified.

By order filed February 14, 1989, this court consolidated the petitions for extraordinary relief in B038583 and B039704 and issued a second alternative writ of mandate regarding the order dated January 20, 1989.

## I. *Initial Petition (B038583)*

■ ■ ■ ■ ■ In their first petition[5] defendants contend that the court's order dated November 21, 1988, was erroneous in all respects as to Eleanor and erroneous as to the remaining defendants only with respect to issues 7, 9, 10, 11, and 15.

### DISCUSSION

### 1. *Standard of Review*

■ "In reviewing an order declaring an issue 'without substantial controversy' pursuant to Code of Civil Procedure section 437c, we are bound by the rules generally applicable to review of summary judgments." (*Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268, 273 [161 Cal.Rptr. 789].)

■ Summary judgment is proper only if the evidence presented by the moving party is sufficient to sustain a judgment in his favor and his opponent does not by evidence show facts sufficient to present a triable

---

[5] A petition for a peremptory writ of review of an order granting summary adjudication of issues must be filed "within 10 days after service upon [petitioner] of a written notice of entry of the order, or within such further time not exceeding 20 days as the trial court may for good cause allow." (Code Civ. Proc., § 437c, subd. (*l*).) These time constraints are mandatory. (See, e.g., *Sturm, Ruger & Co.* v. *Superior Court* (1985) 164 Cal.App.3d 579, 581-582 [210 Cal.Rptr. 573]; accord, *Barth-Wittmore Ins.* v. *H. R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124, 136-137 [214 Cal.Rptr. 894].)

We find the petition to have been timely filed. The proof of service affidavit reflects that a copy of the order granting summary adjudication of issues was personally served on November 18, 1988. Such service was physically impossible and that "more proof" is a nullity since the order was not entered until November 22, 1988. The record contains no other evidence of service of the order. The subject petition was filed on December 1, 1988, which is less than 10 days after the date the order was filed. Accordingly, the petition must be deemed to have been timely filed.

issue. ■ The evidence of the moving party is strictly construed and that of the responding party liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Varco-Pruden, Inc.* v. *Hampshire Constr. Co.* (1975) 50 Cal.App.3d 654, 659 [123 Cal.Rptr. 606].)

Mindful of the foregoing principles, we first address the propriety of granting summary adjudication of the 16 issues against Eleanor and then address the propriety of granting issues 7, 9, 10, 11, and 15 against the remaining defendants.

## 2. *Propriety of Order Summarily Adjudicating Issues Against Eleanor*

■ It is clear from the record and applicable law that the order granting summary adjudication of issues is erroneous as to Eleanor. Eleanor was not a party to the March 16 Agreement, nor did she execute or guarantee any of the notes. Moreover, she did not own the subject property. Plaintiffs conceded in their answers to interrogatories that her sole connection with the subject of this action[6] is her community property interest in the defendant corporations, which is insufficient, as a matter of law, to charge her with the 16 adjudicated issues.

## 3. *Issues 7, 9, 10, 11, and 15 as to the Remaining Defendants*

### a. *Issues 7 and 9*

With respect to issue 7 the court found to be established the fact that "[t]he Notes became fully payable by their own terms on or about December 26, 1981, two months after demand was made." As for issue 9, the court found to be established the fact that "[n]o part of the principal sum of the Notes or the interest thereon has ever been paid by any defendant, either as principal debtor or as guarantor."

■ We deem defendants' assignments of error with respect to the above issues to be meritless inasmuch as their claims are not supported by pertinent argument or authority. (See, e.g., *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873-874 [105 Cal.Rptr. 395].)

### b. *Issues 10 and 11*

As for these issues the court found, respectively, that the first cause of action for breach of contract and the fourth cause of action based on the

---

[6] Although the March 6 agreement contemplated an inducement agreement letter to be executed by Eleanor, the record contains no evidence that Eleanor ever executed such a letter.

guaranties are "not barred by [the four-year and three-month limitation periods] set forth in Code of Civil Procedure section 337."[7]

■ The challenge of HGS to this finding is based in part on its claim that HGS was not added as a defendant until after the four-year limitation period had expired. Specifically, it contends that such limitation period "expired on May 26, 1985, at the latest" while HGS was not added as a new defendant until January 23, 1986.

We find no statute of limitations bar under the four-year period of section 337 as to HGS. The fallacy of its position lies in its premise that HGS was added as a "new" defendant in the second amended complaint filed in 1986. That premise is incorrect. HGS was substituted in as a Doe defendant, and thus, its presence in the action related back to the filing of the original complaint on February 1, 1985. (See, e.g., *Barrington* v. *A. H. Robins Co.* (1985) 39 Cal.3d 146, 150 [216 Cal.Rptr. 405, 702 P.2d 563].) The propriety of the order adding HGS as a Doe is not before this court.

■ The position of the other remaining defendants, joined in by HGS, concerns the three-month limitation period for bringing an action for a deficiency judgment under California law.[8] (See §§ 337, par. 1, 580a, 726, subd. (b).)

Defendants argue that the underlying action was untimely filed for the reason that the sale of the Studio Property to Darion occurred on February 10, 1984, and this action was not filed until February 1, 1985, more than three months later.

We reject defendants' contentions. Based on our analysis, *post,* we point out that the subject property was sold at auction pursuant to a bankruptcy court order based on the Bankruptcy Code, not pursuant to California law governing nonjudicial and judicial foreclosure sales of real property. Accordingly, we find defendants' reliance on the three-month limitation periods of sections 337, paragraph 1, 580a and 726, subdivision (b), to be patently misplaced.

---

[7] In pertinent part section 337, paragraph 1, provides that a four-year period of limitation governs "[a]n action upon any contract, or obligation or liability founded upon an instrument in writing . . . ; provided that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage."

[8] The three-month limitation period for bringing such an action following a nonjudicial foreclosure sale is set forth in section 580a and the second provision of section 337, paragraph 1. The equivalent time bar regarding a judicial foreclosure sale is set forth in section 726, subdivision (b).

c. *Issue 15*

With respect to issue 15, the court found to be established the fact that "[t]he 'fair value' provision of . . . section 580a provides no defense to plaintiffs' Fourth Cause of Action [for breach of the guaranty] against Francis . . . as guarantor."[9]

(1) *A Sale "Free and Clear of Liens" Under the Bankruptcy Code Is Not a Foreclosure Sale Under California Law*

■■■ In challenging the finding on issue 15 defendants' threshold premise is that the sale of the Studio Property to Darion "free and clear of liens" under authority of section 363, subsection (f) of title 11 of the United States Code (11 U.S.C. § 363(f)), is the equivalent of a foreclosure sale pursuant to the most senior lien under California law. In support they cite *Gantt* v. *Jones* (4th Cir. 1921) 272 Fed. 117, 118; *Federal Land Bank of Baltimore* v. *Kurtz* (4th Cir. 1934) 70 F.2d 46, 47 and *In re Cook* (D.Mass. 1924) 7 F.2d 888, 889. Based on this premise they assert that the "fair value" limitation provisions of sections 580a and 726,[10] which apply to foreclosure sales under California law, must therefore apply to the subject sale.

---

[9] In pertinent part section 580a provides: "Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any or interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his or her complaint the entire amount of the indebtedness which was secured by the deed of trust or mortgage at the time of sale, the amount for which the real property or interest therein was sold and the fair market value thereof at the date of sale and the date of that sale. Upon the application of either party made at least 10 days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the probate referees provided for by law to appraise the property or the interest therein sold as of the time of sale. . . . Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of the judgment, exclusive of interest . . . . exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by the deed of trust or mortgage. . . . No judgment shall be rendered in any such action until the real property or interest therein has first been sold pursuant to the terms of the deed of trust or mortgage." The "fair market value" provision of section 580a and the comparable "fair value" provision in section 726 are sometimes referred to simply as the "fair value" limitations or provisions. (See, e.g., *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 602 [125 Cal.Rptr. 557, 542 P.2d 981].)

[10] Section 726, subdivision (b), provides in pertinent part: "In the event that a deficiency is not waived or prohibited and it is decreed that any defendant is personally liable for the debt, then upon application of the plaintiff filed at any time within three months of the date of the foreclosure sale and after a hearing thereon at which the court shall take evidence and at which hearing either party may present evidence as to the fair value of the property or the interest therein sold as of the date of sale, the court shall render a money judgment against the

Defendants, however, "concede that there does not appear to be any state or federal authority on the question of whether . . . Sections 580a and 726 apply following a 'sale free and clear of liens' pursuant to [11 U.S.C. § 363(f)]." Instead, they invite[11] this court, for the first time, to construe a sale of real property, which is subject to a deed of trust or mortgage, "free and clear of liens" pursuant to 11 United States Code section 363(f) to be the equivalent of a nonjudicial or a judicial foreclosure sale, under California law.

After careful scrutiny of the applicable law, we find the contrary conclusion to be correct.

The sale of a debtor's real property "free and clear of liens" under the Bankruptcy Code cannot be equated with either a nonjudicial or judicial foreclosure sale under California law. The material attributes and procedures of such a sale "free and clear of liens" and a foreclosure sale under California law are substantially different. We therefore hold that a sale of real property, which is subject to a deed of trust or mortgage, "free and clear of lien" under authority of 11 United States Code section 363(f) is not a foreclosure sale under California law.

a) *Foreclosure Sales Under California Law*

1) *Nature of Remedies Available*

■ "In the absence of a statute to the contrary, a creditor [whose note is] secured by a trust deed or mortgage on real property may recover the full amount of the debt upon default. He may realize the security or sue on the obligation or both; the obligation is an independent undertaking by the debtor to pay. [Citation.]" (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38 [27 Cal.Rptr. 873, 378 P.2d 97]; accord, *Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733 [111 Cal.Rptr. 897, 518 P.2d 329].) ■ Alternatively, the creditor may seek a personal judgment against any guarantor for the full amount of the note since a guaranty is an obligation separate

---

defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the property or interest therein sold as of the date of sale. In no event shall the amount of the judgment, exclusive of interest from the date of sale and of costs exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by the mortgage or deed of trust. . . . Upon application of any party made at least 10 days before the date set for the hearing the court shall, and upon its own motion the court at any time may, appoint one of the probate referees provided for by law to appraise the property or the interest therein sold as of the time of sale."

[11] This request is joined by amici curiae in their brief filed March 6, 1989.

and independent from that binding the principal debtor. (*Security-First Nat. Bank* v. *Chapman* (1940) 41 Cal.App.2d 219, 221 [106 P.2d 431].)

■ "In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute." (*Walker* v. *Community Bank, supra,* 10 Cal.3d at p. 733.) The creditor has the choice of three remedies upon the debtor's default: he can sue for a personal judgment in the full amount of the debt; (2) he can conduct a private trustee's sale, i.e., foreclose the security through the power of sale under the deed of trust or mortgage (nonjudicial foreclosure); or (3) he can initiate an action for a judicial foreclosure sale. (See, e.g., *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40, 43 [71 Cal.Rptr. 64].)

■ The creditor's election of remedies determines the nature and scope of his recovery. If the creditor chooses to foreclose, then "[u]nder California law 'the creditor must rely upon his security before enforcing the debt. [Citations.] If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.' [Citation.]" (*Walker* v. *Community Bank, supra,* 10 Cal.3d 729, 733.) If the creditor does not first proceed against the security then he is deemed to have waived his right to do so. (*Cornelison* v. *Kornbluth, supra,* Cal.3d 590, 600.)

■ A "deficiency judgment" is a personal judgment against the debtor for the difference between the debt and the proceeds received by the creditor from the sale of the security at a judicial or nonjudicial foreclosure sale. (See *Brown* v. *Jensen* (1953) 41 Cal.2d 193, 198 [259 P.2d 425].) ■ "Section 580d, enacted in 1939, prohibits any deficiency judgment when a creditor elects to foreclose on its real property security by nonjudicial sale. Deficiency judgments are not prohibited after judicial foreclosures, but the debtor retains a statutory right of redemption for one year. (§§ 725a, 729.030.) The purpose of section 580d is 'to put judicial enforcement on a parity with private enforcement. . . . If the creditor wishes a deficiency judgment, his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title, he must forego the right to a deficiency judgment.' [Citation.]" (*Walter E. Heller Western, Inc.* v. *Bloxham* (1985) 176 Cal.App.3d 266, 271 [221 Cal.Rptr. 425]; fn. omitted.) The Legislature could have given the debtor a right to redeem after a sale under the power of sale. "The right to redeem, like a proscription of a deficiency judgment, has the effect of making the security satisfy a realistic share of the debt. [Citation.] By choosing instead to bar a deficiency judgment after private sale, the Legislature achieved its purpose without denying the creditor his election of remedies." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43.)

■ The deficiency judgment bar of section 580d,[12] on its face, applies only to debts evidenced by a "note" secured by a deed of trust or mortgage. The "fair value" limitation on deficiency judgments in section 580a does not therefore apply where the debt is evidenced by a note. However, where the obligation is evidenced by something other than a promissory note, e.g., a lease, the "fair value" limitation does apply.[13] (See, e.g., *Willys of Marin Company* v. *Pierce* (1956) 140 Cal.App.2d 826, 831 [296 P.2d 25]; cf. *Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d at p. 271, fn. 5.)

■ The "fair value" limitation provisions of sections 580a and 726 operate to preclude a creditor from obtaining a deficiency judgment for the difference between the amount of the indebtedness and the amount realized from the foreclosure sale where the sale price was not equivalent to the fair market value of the property sold. As applied, the "fair value" limitation provisions limit the creditor's right to a "deficiency judgment after exhaustion of the security to the difference between the fair value of the property at the time of the sale (irrespective of the amount actually realized at the sale) and the outstanding debt for which the property was security."[14] (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 601.)

### 2) *Foreclosure Procedures Under California Law*

■ A judicial foreclosure proceeding may be initiated at any time after a default on the secured obligation. (*Lincoln* v. *Superior Court* (1934) 2 Cal.2d 127, 129 [39 P.2d 405].) It is commenced by filing a complaint in the superior court of the county in which the real property is situated. (§§ 86, 392; Cal. Const., art. VI, § 10; *Vance* v. *Gilbert* (1918) 178 Cal. 574, 576-577 [174 P. 42].) ■ In its "decree for the foreclosure" the court, inter alia, directs the sale of the encumbered property, determines the amount to be paid the creditor-plaintiff, determines the personal liability of any

---

[12] In pertinent part section 580d provides: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property . . . in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust."

[13] In the present case the deed of trust secured promissory notes. Accordingly, the bar of section 580d to any deficiency judgment precludes the application of the fair value limitation of section 580a even if the sale "free and clear of liens" could be construed to be a nonjudicial foreclosure sale.

[14] For example, if the amount of the indebtedness were $80,000 and the fair market value of the property were $75,000, then the creditor has a right to a deficiency judgment in the sum of $5,000. If the sale price were $60,000, this would mean the creditor would be short $15,000 (i.e., the difference between the amount of indebtedness and the amount of the sale price ($20,000) less the difference between the amount of indebtedness and the amount of the fair market value of the property ($5,000)). On the other hand, if the amount of the indebtedness were $80,000 and the fair market value of the property were $85,000, then the creditor would be barred from a deficiency judgment in any amount.

defendant, e.g., debtor and guarantor, for payment of the debt, names the defendants against whom a deficiency judgment may be ordered, or declares that there shall be no deficiency judgment. (§§ 725a, 726.) If the right to a deficiency judgment is not waived or barred, the property is sold subject to the right of redemption as provided in sections 729.010 to 729.090. (§ 726, subd. (e).)

The method of sale is through the execution of a writ of sale. (§§ 716.010 et seq., 726, subd. (e), 729.010-729.090; Civ. Code, § 2931.) The sale is at auction to the highest bidder (§ 701.570, subd. (b)) and terminates upon acceptance of the last and highest bid or when the sale proceeds are sufficient to satisfy the money judgment (i.e., the debt). (§ 701.570, subd. (e)).

If the sale proceeds are insufficient to satisfy the amount of indebtedness, then the creditor may apply to the court within three months of the date of the sale for a deficiency judgment subject to the "fair value" limitation of section 726.

■■■ A nonjudicial foreclosure sale under the power of sale in a deed of trust or mortgage, on the other hand, must be conducted in strict compliance with its provisions and applicable statutory law. A trustee's powers and rights are limited to those set forth in the deed of trust and laws applicable thereto. (See, e.g., *Fleisher* v. *Continental Auxiliary Co.* (1963) 215 Cal.App.2d 136, 139 [30 Cal.Rptr. 137]; *Woodworth* v. *Redwood Empire Sav. & Loan Assn.* (1971) 22 Cal.App.3d 347, 366 [99 Cal.Rptr. 373].) ■■■ No court order authorizing or approving the sale is involved. A sale under the power of sale in a deed of trust or mortgage is a "private sale." (*Walker* v. *Community Bank, supra,* 10 Cal.3d at p. 736.)

The statutory procedures governing the conduct of such sales are found in Civil Code sections 2924, 2924a-2924h, which set forth the time periods in which to comply with certain requirements, the persons authorized to conduct the sale, the requirements of notice of default and election to sell and for cure of default and reinstatement, inter alia.[15] The sale is concluded when the trustee accepts the last and highest bid. (Civ. Code, § 2924h, subd. (c).)

---

[15] For instance, a trustee under power of sale cannot proceed with sale of the encumbered property until three months after the notice of default is recorded. (Civ. Code, §§ 2924; 2924f, subd.(c)(3).) The notice of default must state the default can be cured by payment of the overdue amount (Civ. Code, § 2924c) and the notice must be recorded (Civ. Code, § 2924). The debtor has the right of redemption only up to the time of sale. (Civ. Code, § 2903.)

b) *Sale "Free and Clear of Liens" Under the Bankruptcy Code*

 A sale "free and clear of liens" under 11 United States Code section 363(f) is a method of obtaining proceeds to pay creditors which is an alternative to a judicial or nonjudicial foreclosure sale under state law. (See *Rubenstein* v. *Nourse* (8th Cir. 1934) 70 F.2d 482, 484; see also, *Federal Land Bank of Baltimore* v. *Kurtz, supra*, 70 F.2d 46, 47.) Once the jurisdiction of the bankruptcy court has been invoked, the creditor's options of a judicial or nonjudicial foreclosure sale are barred by the automatic stay provisions of the Bankruptcy Code. (11 U.S.C. § 362 (a)(4) [estate property] and (a)(5) [property of the debtor].) The creditor may request relief from the stay. (11 U.S.C. § 362 (d)); however, the decision whether to lift the stay lies in the discretion of the bankruptcy court. (See, e.g., *In re Gellert* (Bkrtcy. 1985) 55 B.R. 970, 974-975.)

If relief from the stay is granted unconditionally, then the creditor, at its election, may proceed with a judicial or nonjudicial foreclosure sale of the property under the procedures of state law. If relief from the stay is not granted, disposition of the property must then be determined under bankruptcy law. One available means is a sale of the property "free and clear of liens."

Under the former 1898 Bankruptcy Act, the bankruptcy court had inherent power, under its express power to administer bankruptcy estates, to order the sale of property "free and clear of liens," even over the objection of lienholder creditors. (See, e.g., *Matter of Hooten Enterprise, Inc.* (Bkrtcy. 1982) 21 B.R. 499, 502; *Wright* v. *Union Central Ins. Co.* (1938) 304 U.S. 502, 517 [82 L.Ed. 1490, 1501-1502, 58 S.Ct. 1025]; *Reconstruction Finance Corp.* v. *Rhodes* (5th Cir. 1954) 214 F.2d 606, 607; *In re Gish* (D.C.Ky. 1928) 32 F.2d 322, 323.)

It was a well-established rule that a sale "free and clear of liens" would ordinarily be ordered only if the sale of the property would bring in more than the aggregate of encumbrances and sale expenses. (*Hoehn* v. *McIntosh* (6th Cir. 1940) 110 F.2d 199, 201-202; *Reconstruction Finance Corporation* v. *Cohen* (10th Cir. 1950) 179 F.2d 773, 777.) The fact that the sale did not actually bring in enough to satisfy lienholders, however, did not preclude the court from confirming the sale. (*In re Beardsley* (D.Md. 1941) 38 F.Supp. 799, 803.)

Also well established was the rule that where the property was sold "free and clear of liens" the creditors, after the sale, could not assert any further claim or lien against the property; instead, their respective rights were transferred to the proceeds of the sale. It then became the duty of the court

to rank all claims and supervise the distribution and payment of the sale proceeds. (*Drybrough* v. *Ware* (6th Cir. 1940) 111 F.2d 548, 550.)

From the foregoing it is clear that a sale "free and clear of liens" under the former 1898 Bankruptcy Act was in the nature of a "judicial sale," i.e., conducted under authority and supervision of the bankruptcy court.

 After October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, which repealed the 1898 bankruptcy act and adopted the Bankruptcy Code,[16] the nature of a sale "free and clear of liens" was changed. Under the Bankruptcy Code a sale "free and clear of liens" became authorized by statute. (11 U.S.C. § 363(f).) It is not a judicial sale if it is conducted by the bankruptcy trustee without a court order.[17] (See *Matter of Hooten Enterprise, Inc., supra,* 21 B.R. 499, 501, at fn. 4; *In re Gabel* (Bkrtcy. 1985) 61 B.R. 661, 667.) However, it remains a judicial sale[18] if it is conducted pursuant to a court order. (See 11 U.S.C. § 105 (a).) There is no right of redemption following the sale in either instance. (See *In re Chilton* (D.C.Colo. 1937) 18 F.Supp. 937, 938.)

"Under § 363 of title 11, Congress gave trustees [in bankruptcy] a broad power to sell property of an estate and provided for the safeguarding of interests other than those of the bankruptcy estate. This section clearly indicates that the manner of sale is within the discretion of the trustee and that any such sale is not a judicial sale as was the case under [former] § 70 of the Bankruptcy Act." (*In re Alisa Partnership* (Bkrtcy. 1981) 15 B.R. 802; accord, *In re Canyon Partnership* (Bkrtcy. 1985) 55 B.R. 520, 524.)

"The trustee, after notice and a hearing, may . . . sell . . . other than in the ordinary course of business, property of the estate." (11 U.S.C. § 363 (b).) "The trustee may sell property under subsection (b) . . . free and clear

---

[16] "[T]he 1898 Act was repealed effective October 1, 1979, as provided for by Section 401(a) of Title IV of the 1978 statute, Pub.L. 95-598, 92 Stat. 2682." (*In re M & M Transp. Co.* (Bkrtcy. 1981) 13 B.R. 861, 864, at fn. 3.)

[17] One commentator observed: "Due to the fact that sales under section 363 will not be approved or confirmed by the [bankruptcy] court except where a hearing is requested by a party in interest [e.g., creditor], much of the case law under the [former] Act is of doubtful relevance. For example, under the Act the court was viewed as occupying the position of vendor. . . . *Under the Code the vendor will be the trustee.*" (2 Collier on Bankruptcy (15th ed. 1988) § 363.01, fn. 3.)

[18] This is a conclusion we draw from our review of cases under the former 1898 Bankruptcy Act since there is no statutory or case law illuminating this point. In light of the dearth of cases interpreting the Bankruptcy Code we glean and adopt those principles and rules of law in cases decided under the act which are not repugnant to the code. Nonetheless, we cite to and quote from cases decided under the act with some reservation in view of the substantive changes in the Bankruptcy Code. (See *Matter of Hooten Enterprise, Inc., supra,* 21 B.R. 499, 502; see also, 2 Collier on Bankruptcy, *supra,* § 363.03, at pp. 363-20.)

of any interest in such property of an entity other than the estate, only if . . . such entity consents; [or] . . . such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of such interest. . . ." (11 U.S.C. § 363(f)(2) & (3); see generally, *In re Bobroff* (Bkrtcy. 1984) 40 B.R. 526, 527-528.)[19]

■ A debtor-in-possession has all the duties, rights, and powers of a trustee in bankruptcy, except the right to compensation. (11 U.S.C. § 1107 (a).) This includes the authority to sell property of the estate "free and clear of liens" under 11 U.S.C. § 363(f). (*Southern Ry. Co.* v. *Johnson Bronze Co.* (3d Cir. 1985) 758 F.2d 137, 140.)

■ No actual or formal hearing is required, merely an opportunity for objections. A formal hearing is required only if objections exist. (758 F.2d at p. 140; 11 U.S.C. § 102 (1); see also, 2 Collier on Bankruptcy, *supra,* § 363.03, pp. 363-17 to 363-18.)

■ It is clear from the plain language of 11 United States Code 363 that the option of a sale "free and clear of liens" belongs solely to the bankruptcy trustee or the debtor-in-possession, as the case may be.[20] In other words, if either does not choose to hold a sale "free and clear of liens," a creditor, who is not authorized to make such an election, cannot force such a sale. (See, e.g., *In re Calvary Temple Evangelistic Ass'n* (Bkrtcy. 1984) 47 B.R. 520, 524-525; see also, *In re Sawilowsky* (S.D.Fla. 1922) 284 Fed. 975, 976.)

On the other hand, a creditor may object to a proposed sale "free and clear of liens" if the creditor and debtor-in-possession cannot agree to the terms and conditions of such a sale. "A motion to sell under § 363 is a very different type of proceeding than an adversary proceeding . . . . A motion to sell, in general, involves a need by the debtor or [creditor] to be able to negotiate rather freely." (*In re Calvary Temple Evangelistic Ass'n, supra,* 47 B.R. at p. 523.)

Where the creditor objects to a sale "free and clear of liens" such sale may nonetheless take place if so ordered by the bankruptcy court.[21] The

---

[19] Subsequent to the events relevant to this case, subsection (b) of section 363 was redesignated as subsection (b)(1) and the reference in subsection (f)(3) to "the aggregate value of such interest" was amended to read "the aggregate value of all liens on such property." (Pub. L. 98-353, title III, § 442(d), July 10, 1984, 98 Stat. 371.)

[20] Since the bankruptcy court is not expressly empowered to compel a sale free and clear of liens, a presumption arises that under the Bankruptcy Code, as contrasted with the former bankruptcy act, the court has no authority to require such a sale where the trustee in bankruptcy or debtor-in-possession resists.

[21] It should be noted, that as a practical matter, a sale free and clear of liens would most probably be conducted as a judicial sale since a purchaser might otherwise have problems showing a clear title. (See 2 Collier on Bankruptcy, *supra,* § 363.03, pp. 19-20.)

court has express authority to prohibit the sale or to so condition the sale "as is necessary to provide adequate protection of [the creditor's] interest." (11 U.S.C. § 363(e); see also, *In re Burke Mountain Recreation, Inc.* (Bkrtcy. 1985) 56 B.R. 72, 72-73; see also, *In re George Ruggiere Chrysler-Plymouth* (11th Cir. 1984) 727 F.2d 1017, 1019.) ▮▮ If ordered by court, the sale is a "judicial sale" as opposed to an "execution sale." (*Matter of Hooten Enterprises, supra,* 21 B.R. 499, 501; *In re A.H.—R.S. Coal Corp.* (Bkrtcy. 1981) 8 B.R. 455, 458; *In re Governor's Island* (Bkrtcy. 1984) 45 B.R. 247, 253; *In re Haywood Wagon Co.* (2d Cir. 1914) 219 Fed. 655, 659.)

▮▮ The sale "free and clear of liens" is for the benefit of all creditors, not merely those who hold liens on the property sold. (See, e.g., *In re American Magnestone Co.* (S.D.Ill. 1929) 34 F.2d 681, 682; *In re Beardsley, supra,* 38 F.Supp. 799, 803; *In re Bowen* (E.D.Pa. 1942) 46 F.Supp. 631, 637.) The rights of creditors, including lienholders, are transferred from the *res* to the sale proceeds. (*Gotkin v. Korn* (D.C. Cir. 1950) 182 F.2d 380, 382 [86 App.D.C. 372].) ▮▮ A sale "free and clear of liens" is thus favored if the debtor has equity in the real property and the sale is in the debtor's best interest. (*Matter of Investors Funding Corp. of New York* (2d Cir. 1979) 592 F.2d 134, 135.) It is thus in the debtor's best interest to obtain the highest price possible at the sale, i.e., a price as close as possible to fair market value of the property. (See *Allebach v. Thomas* (4th Cir. 1927) 16 F.2d 853, 854-855.)

▮▮ If it is a private sale "free and clear of liens" the trustee or debtor-in-possession sets the minimum bid and the amount of the incremental bids thereafter. ▮▮ ▮▮ ▮▮ If it is a judicial sale "free and clear of liens," then it is the court which determines those matters.[22]

▮▮ "Confirmation" is a device for the protection of the debtor's estate. (See, e.g., *Gordon v. Woods* (1st Cir. 1951) 189 F.2d 76, 78.) In a judicial sale an accepted bid at the sale has no legal significance until the sale is confirmed by the bankruptcy court. (See, e.g., *In re Klein's Rapid Shoe Repair Co.* (2d Cir. 1931) 54 F.2d 495, 496; *In re Susquehanna Chemical Corporation* (W.D.Pa. 1950) 92 F.Supp. 917, 919-920.)

▮▮ The bankruptcy court has discretion to refuse to confirm a sale to the highest bidder where the sale price is grossly inadequate. (*In re Muscongus Bay Co.* (1st Cir. 1979) 597 F.2d 11, 12; see also, *In re Gabel, supra,* 61 B.R. 661, 667.) ▮▮ " '[G]ross inadequacy is said to exist when—

[22] Sales by the bankruptcy court are considered preferable because the impartial court can control the sale price so that the highest obtainable price can be secured. (*In re Casaudoumecq* (S.D.Cal. 1947) 46 F.Supp. 718, 724; *In re Bender Body Co.* (S.D. Ohio 1942) 47 F.Supp. 224, 230-231.)

apart from situations involving fraud or unfairness, . . . there is a substantial disparity between the highest bid and the appraised or fair market value, and "there is a reasonable degree of probability that a substantially better price will be obtained by a resale . . . ." [Citations.]' " (*In re Muscongus Bay Co., supra,* 597 F.2d 11, 12; *Munro Drydock, Inc.* v. *M/V Heron* (1st Cir. 1978) 585 F.2d 13, 15.) ▪ By virtue of its familiarity with the property and circumstances surrounding the sale the bankruptcy court is in the best position to evaluate the evidence concerning the fair market value of the property and its reasonableness. (*In re Muscongus Bay Co., supra,* 597 F.2d at p. 12.)

c) *Foreclosure Sales under California Law Vis-à-Vis Sales "Free and Clear of Liens" Under the Bankruptcy Code*

From our review of the substance and procedures applicable to the three types of sales, *ante,* it is clear that they are dissimilar in material respects. For example, a nonjudicial foreclosure sale is a private sale held pursuant to a power of sale in the deed of trust or mortgage. Although a sale "free and clear of liens" is a private sale when conducted by a trustee or debtor-in-possession without a court order, it is a sale under the authority of 11 United States Code section 363(f), and not under a power of sale in a deed of trust or mortgage. ▪ A judicial foreclosure sale is not a "judicial sale," albeit a court issues a "decree for foreclosure" of the property. Instead, it is an "execution sale" since the property is sold by execution of a writ of sale. In contrast, when a sale "free and clear of liens" is ordered by the bankruptcy court, such sale is a "judicial sale."

The creditor has an election of remedies in the case of a judicial or nonjudicial foreclosure sale. The creditor, however, cannot elect a sale "free and clear of liens" under the Bankruptcy Code. Only the trustee in bankruptcy or debtor-in-possession has that right. The motivating factor in a judicial or nonjudicial foreclosure sale is to ensure that the sale produces enough proceeds to satisfy the creditor seeking the sale. On the other hand, the motivating factor in a sale "free and clear of liens" is to realize as much money as possible for the benefit of all creditors and the debtor.

(2) *As a Matter of Statutory Law, the "Fair Value" Limitation Provisions Do Not Apply to a Sale "Free and Clear of Liens"*

▪ We further hold that the "fair value" limitation provisions of sections 580a and 726 do not apply to a sale "free and clear of liens" under the Bankruptcy Code since such a sale is neither a judicial nor a nonjudicial foreclosure sale under California law.

The "fair value" limitations, by statute, apply only to a judicial foreclosure sale (§ 726) or a nonjudicial foreclosure sale (§ 580a) under California law. A sale "free and clear of liens" under the Bankruptcy Code is neither a judicial foreclosure sale nor a nonjudicial foreclosure sale.

(3) *Equity Does Not Compel Application of "Fair Value" Limitations (§§ 580a, 726) to Sales "Free and Clear of Liens" Under the Bankruptcy Code*

Defendants' alternative premise is that the "fair value" limitations (§§ 580a, 726) must be deemed to apply to a sale "free and clear of liens" under 11 United States Code section 363(f) in order to equalize the protection of their rights under bankruptcy law and state law. As authority, they rely primarily on *Butner* v. *United States, supra,* 440 U.S. 48.

In *Butner* the court announced: "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' [Citation.] The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests . . . ." (440 U.S. at p. 55 [59 L.Ed.2d at pp. 141-142].)

We have no quarrel with defendants' citation of authority. The fallacy of defendants' premise is their claim that their right under California law to be protected against a double recovery by the creditor suffers from unequal protection if a sale "free and clear of liens" under the Bankruptcy Code is not subject to the "fair value" limitation provisions of sections 580a or 726.

The protection of defendants' rights under the Bankruptcy Code is equivalent to that under California law. The issue is simply one of an election of remedies, i.e., a sale "free and clear of liens" by the trustee in bankruptcy or debtor-in-possession, on the one hand, or a foreclosure sale, judicial or nonjudicial, by the creditor, on the other. The incentive to obtain a sale price which is approximately the fair market value of the property exists under a sale "free and clear of liens" as well as under a nonjudicial foreclosure sale, or a judicial foreclosure sale, albeit the incentives differ.

█ The "[f]air value provisions are designed to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies. [Citations.]" (*Roseleaf Corp.* v.

*Chierighino, supra,* 59 Cal.2d 35, 40.) The "fair value" provisions of both sections 580a and 726 operate as an incentive for the creditor to ensure the accepted bid approximates the fair market value of the property, because he would be barred from recovering any amount in excess of the difference between the amount of the indebtedness and the fair market value of the property. In other words, the creditor would be unable to collect the unpaid balance of the indebtedness to the extent that the fair market value exceeded the sale price.

In a sale "free and clear of liens" on the other hand, the incentive to obtain the highest possible price is to protect the equity of the debtor and to obtain as much money as possible to pay all creditors.

The purpose of the "fair value" limitations of sections 580a and 726, moreover, would not be furthered by applying such a limitation to a sale "free and clear of liens" under the Bankruptcy Code. The election of such a sale is at the option of the trustee in bankruptcy or debtor-in-possession, not the creditor. The minimum amount of the bid and incremental bids thereafter are matters determined either by the trustee in bankruptcy or debtor-in-possession or the bankruptcy court, not the creditor. Moreover, the bankruptcy court has jurisdiction to refuse to confirm the sale or set aside the sale if the accepted bid is too much less than the fair market value of the property.

Whether the protection of the Bankruptcy Code or state law is to be invoked rests with the debtor-in-possession or trustee in bankruptcy not the creditor. If the debtor-in-possession elects a sale "free and clear of liens," then the burden rests with him to ensure that the accepted bid approximates the fair market value of the property. On the other hand, if he allows the creditor to proceed with a judicial or nonjudicial foreclosure sale, then the burden rests with the creditor to ensure that the accepted bid approximates the fair market value of the property. In either case, the debtor is protected against a double recovery by the creditor.

Based on the foregoing we hold that equity does not compel the application of the "fair value" limitations (§§ 580a, 726) to a sale "free and clear of liens" under the Bankruptcy Code.

No different conclusion is mandated where a junior lienholder buys the property at a sale "free and clear of liens." In a nonjudicial foreclosure situation a junior lienholder who buys at a senior's sale is subject to the "fair value" limitation of section 580a on equity grounds: "[I]t is equitable to apply the fair value limitations to him. Any loss to him as creditor by his own underbidding is gained by him as purchaser for a bargain price. [Cita-

tion.] 'To so limit the deficiency judgment right is consistent with the general purpose of section 580a, *viz.*, to protect against a lienor buying in the property at a deflated price, obtaining a deficiency judgment, and achieving a recovery in excess of the debt by reselling the property at a profit. . . .' [Citation.]" (*Walter E. Heller Western, Inc.* v. *Bloxham, supra,* 176 Cal.App.3d 266, 273-274; see also, *Bank of Hemet* v. *United States* (9th Cir. 1981) 643 F.2d 661, 669.)

Equity does not compel the application of the "fair value" limitations to a sale "free and clear of liens" where the property is bought by a junior lienholder. Again, in such a sale the minimum bid is set by either the debtor-in-possession, bankruptcy trustee, or bankruptcy court, not by a creditor. It is in the best interests of the debtor's estate for the minimum bid to approximate the fair market value of the property. If the accepted bid did not approximate the fair market value, the bankruptcy court has jurisdiction not to confirm the sale or to vacate the sale. The junior lienholder therefore would not be gaining the property "for a bargain price" due to "his own underbidding," unlike the situation in a nonjudicial foreclosure sale.

Equity also does not dictate that the "fair value" limitations should apply where the creditor sues the guarantor of the obligation following a sale "free and clear of liens." A sale "free and clear of liens" is unlike the situation facing the court in *Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d 40, wherein the court held that equity demanded the application of the bar of section 580d in an action by the creditor against the guarantor for a deficiency judgment. The *Union Bank* court reasoned that it was fair to limit the creditor's recovery against the guarantor in this manner, because the creditor's election of a trustee's sale against the debtor destroyed the guarantor's rights against the debtor, i.e., no right of redemption would be available following a trustee's sale. (*Id.* at p. 44.) In the case of a sale "free and clear of liens" it was the debtor-in-possession or bankruptcy trustee, not the creditor, who made the choice of such a sale. (Cf. *Krueger* v. *Bank of America* (1983) 145 Cal.App.3d 204, 211 [193 Cal.Rptr. 322].)

(4) *Posture of Present Case*

In the present case the sale "free and clear of liens" was held at the instance of HGS, the debtor-in-possession. The bankruptcy court by order filed December 22, 1983,[23] approved the election by HGS to sell the Studio

---

[23] It should be noted that Security Pacific National Bank, the senior lienholder under a deed of trust on the Studio Property, was authorized by the December 22, 1983, order to foreclose, either pursuant to a judicial or nonjudicial sale, if no sale of the Studio Property "free and clear of liens and encumbrances" under that order took place.

Property free and clear of liens, set the minimum bid at $12.2 million, and required each subsequent bid to be at least $100,000 above the prior bid. The subject real property and specified personal property was required to be sold as a unit rather than separately.

Darion purchased the Studio Property "free and clear of liens and encumbrances" at the auction sale for $12.3 million. Darion was authorized, both by the December 22, 1983, order and under 11 United States Code section 363(k) to "credit bid" the amount of its security interest in the Studio Property. At oral argument Darion represented that it did not do so. Instead, it paid cash. That representation was not contested by defendants. Accordingly, Darion acquired the Studio Property in the posture of a stranger who had no security interest in the property.

■ After such a sale the secured creditors cannot assert any claim of lien against the real property. Instead, their respective rights thereto are transferred to the proceeds of the sale. It is then incumbent on the bankruptcy court to determine the rank of all claims with respect to the proceeds and to supervise the distribution and payment accordingly. (*Drybrough* v. *Ware, supra,* 111 F.2d 548, 550.) Darion made the further representation at oral argument that it received nothing from the sale proceeds. That representation was also not contested by defendants.

■ We therefore conclude that defendants' complaint as to the unfairness, if any, of the purchase price of the real property at the sale "free and clear of liens" must be addressed in the bankruptcy proceeding before the bankruptcy court and not in this state court. HGS has, in fact, filed an action on February 10, 1989, in the United States District Court, for a declaration that the Bankruptcy Court order dated February 10, 1984, is a nullity and that HGS owns the Studio Property.

This disposition renders it unnecessary to address defendants' remaining contentions.

II. *The Second and Supplemental Petitions (B039704)**

. . . . . . . . . . . . . . . . . . . .

DECISION

In B038583 let a peremptory writ of mandate issue, commanding respondent court to vacate its order of November 21, 1988, as to Eleanor. The

---

* See footnote, *ante,* page 848.

petitions in B039704 are dismissed as to Eleanor. In all other respects, the petitions are denied. The alternative writs, having served their purpose, are discharged. Each party is to bear its own costs.

Klein, P. J., and Arabian, J., concurred.

A petition for a rehearing was denied July 18, 1989.